## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| ROBERT CURTIS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Docket No. 1:15-cv-487-NT |
| | ) |
| CONTRACT MANAGEMENT | ) |
| SERVICES, | ) |
| | ) |
| Defendant. | ) |

## ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION

Before the Court is the Defendant's motion to compel arbitration. (ECF No. 20). For the reasons stated below, the motion is **DENIED.**

## BACKGROUND

The Plaintiffs in this matter are Robert Curtis and Robert Lowell. Both worked as delivery drivers for an entity called Scholarship Storage, Inc., d/b/a Business as Usual ("**BAU**"). Defendant Contractor Management Services, LLC ("**CMS**") is an Arizona company that markets itself as the "leading full-service firm for companies utilizing Independent Contractors." Compl. ¶¶ 9, 14 (ECF No. 1). The Complaint alleges that:

> BAU was a CMS client . . . . CMS developed the contracts that BAU used to describe Plaintiffs and other drivers as independent contractors. CMS processed all of BAU's payroll checks, taking out deductions for equipment drivers were required to lease or purchase, prescription "insurance" premiums . . . , and fees . . . as payment to CMS for processing each payroll check.

Compl. ¶ 15.

The Plaintiffs have settled a separate class action and collective action asserting violations of the Fair Labor Standards Act and Maine wage and hour laws against BAU. *Curtis v. Business As Usual*, No. 2:14-cv-303-NT, 2016 WL 3072247 (D. Me. May 31, 2016). In this action, the Plaintiffs allege that CMS aided and abetted BAU, was a joint employer with BAU, or engaged in a joint enterprise with BAU, and that CMS is liable for:

- overtime violations of the Fair Labor Standards Act, 29 U.S.C. § 216(b) (Count I);

- unpaid wages under the Maine Employment Practices Act, 26 M.R.S.A. § 629 (Count II);

- overtime violations under the Maine Minimum Wage and Overtime Law, 26 M.R.S.A. § 661 *et seq.* (Count III);

- violation of the Maine Employment Practices Act, 26 M.R.S.A. § 629 (Count IV);

- unjust enrichment/restitution (Count V); and

- conversion for making deductions for insurance, leased equipment and check processing (Count VI).

The Defendant has moved to compel arbitration pursuant to a "System Resource Subscription" agreement ("**SRS Agreement**") entered into between CMS and each of the Plaintiffs. The SRS Agreements for the named Plaintiffs were submitted with the Defendant's motion to compel arbitration. SRS Agreement (ECF Nos. 20-3 and 20-4). The Defendant asserts that each of the named Plaintiffs accessed CMS's online platform, opened the SRS Agreement, clicked through each page of it and electronically signed the agreement. Aff. of Greg Stultz ¶¶ 5-8. (ECF No. 20-1).

Each SRS Agreement contains an identical arbitration provision that provides:

> If a dispute arises out of or relates to my relationship with CMS, this Subscription, or a breach hereof, and if the dispute cannot be settled through negotiation, I agree to resolve the dispute through binding arbitration only as described in this section (hereafter "the Arbitration Provision").[1]

SRS Agreement 4. The Arbitration Provision also includes a provision entitled "**CLASS ACTION WAIVER**" that states:

> **Both CMS and end user agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative basis.** There will be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective, representative or private attorney general action, or as a member in any purported class, collective, representative or private attorney general action, including without limitation pending but not certified class actions ("Class Action Waiver"). Disputes regarding the validity and enforceability of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator. In any case in which (1) the dispute is filed as a class, collective, representative or private attorney general action and (2) a civil court of competent jurisdiction finds all or part of the Class Action Waiver unenforceable, the class, collective, representative and/or private attorney general action to that extent must be litigated in a civil court of competent jurisdiction, but the portion of the Class Action waiver that is enforceable shall be enforced in arbitration.

SRS Agreement 5, section C. In addition to these and other sections, the Arbitration Provision contains a "**THIRTY-DAY OPT-OUT PERIOD**" provision that provides:

> If I do not want to be subject to this Arbitration Provision, I may opt out of this Arbitration Provision by notifying CMS in writing of my desire to opt out of this Arbitration Provision, which writing must be dated, signed and submitted by U.S. Mail or hand delivery to Contractor Management Services, LLC, Attn. Risk Management, 9197 W Thunderbird Rd. Peoria, AZ 85381. In order to be effective, the writing must clearly indicate my intent to opt out of this Arbitration Provision

---

[1]     The SRS Agreement goes on to itemize "Claims Covered by Arbitration Provision," including: "claims regarding any city, county, state or federal wage-hour law, . . . compensation, meal or rest periods, expense reimbursement, . . . and claims arising under the . . . Fair Labor Standards Act, . . . and state statutes, if any, addressing the same or similar subject matters, and all other similar federal and state statutory and common law claims." SRS Agreement 4, section (i) (ECF No. 20-3).

and the envelope containing the signed writing **must be post-marked within 30 days** of the date I sign this Subscription. My writing opting out of this Arbitration Provision will be filed with a copy of this Subscription and maintained by CMS. Should I not opt out of this Arbitration Provision within the 30-day period, CMS and I will be bound by the terms of this Arbitration Provision.

SRS Agreement 6, section G. The SRS Agreement further provides that "[i]n the event that any portion of this Arbitration Provision is deemed unenforceable, the remainder of this Arbitration Provision will be enforceable."  SRS Agreement 6, section H.

## DISCUSSION

CMS contends that this case cannot proceed in court because it is "governed by the Federal Arbitration Act." Def.'s Mot. to Compel Arbitration 1 (ECF No. 20). The Plaintiffs argue that the arbitration agreement is unenforceable because it conflicts with the National Labor Relations Act ("**NLRA**"), 29 U.S.C. §§ 151-169, and because it prohibits Plaintiffs from effectively vindicating their rights under the Fair Labor Standards Act ("**FLSA**"), 29 U.S.C. §§ 201-219. Pls.' Opp'n to Def.'s Mot. to Compel 4-10 ("**Pls.' Opp'n**") (ECF No. 24).

The Federal Arbitration Act ("**FAA**") provides, in pertinent part:

A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . .  shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The statute embodies "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract[.]" *Id.* (citations and quotations omitted). "Federal statutory claims are just as arbitrable as anything

else, 'unless the FAA's mandate has been overridden by a contrary congressional command.' " *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1156 (7th Cir. 2016) (quoting *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012)). Moreover, the purpose of Section 2 "is 'to make arbitration agreements as enforceable as other contracts, but not more so.' " *Gaffers v. Kelly Servs., Inc.*, No. 16-10128, 2016 WL 4445428, at *5 (E.D. Mich. Aug. 24, 2016) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)). Thus, Section 2's savings clause "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 340 (quoting *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996)). Illegality is a defense to enforcement under Section 2's savings clause. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006).

## I.    Whether the Arbitration Agreement Is Enforceable

### A.    Class Action Waiver

CMS contends that the FAA mandates enforcement of the arbitration provision including the class action waiver portion of the SRS agreement. Def.'s Mot. to Compel Arbitration 6-8. The Plaintiffs claim that the class action waiver violates their right to engage in collective activity under Section 7 of the NLRA. Pls.' Opp'n 4-6.

Section 7 of the NLRA grants employees:

> The right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and *to engage in other concerted activities for the purpose of* collective bargaining or other *mutual aid or protection.*

29 U.S.C. § 157 (emphasis added). Section 8 of the NLRA makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157." 29 U.S.C. § 158. It has long been established that "the filing of a labor related civil action by a group of employees is ordinarily a concerted activity protected by § 7, unless the employees acted in bad faith." *Leviton Mfg. Co., Inc. v. NLRB,* 486 F.2d 686, 689 (1st Cir. 1973) (citations omitted); s*ee also Eastex, Inc. v. NLRB*, 437 U.S. 556, 566 (1978).

In 2012, the issue of whether a class action waiver constituted a violation of the NLRA came to the fore in a case before the National Labor Relations Board (the "**NLRB**" or the "**Board**"). *D. R. Horton, Inc.,* 357 NLRB 2277 (2012) ("*Horton I*"), *enf. denied* 737 F.3d 344 (5th Cir. 2013). There, the NLRB held that conditioning employment on the acceptance of an agreement containing a class or collective action waiver violated the Section 8 of the NLRA. *Id.* at 2278.

Since *Horton I*, the circuit courts have split on the question. Reviewing the NLRB's decision in *Horton I*, the Fifth Circuit held that the NLRB gave inadequate weight to the FAA and denied enforcement of the Board's position that the class action waiver violated the NLRA. *D.R. Horton, Inc. v. NLRB,* 737 F.3d 344 (5th Cir. 2013) ("*Horton II*"). The Fifth Circuit reiterated this holding in *Murphy Oil v. NLRB*, 808 F.3d 1013 (5th Cir. 2015).[2] The Eighth and Second Circuits have reached similar conclusions. *See Cellular Sales of Missouri v. NLRB*, 824 F.3d 772 (8th Cir. 2016);

---

[2]     Even after the Fifth Circuit refused to enforce the NLRB's order in *Horton II*, the NLRB stuck with its position. *See Murphy Oil USA, Inc.*, 361 NLRB No. 72 (2014), *enf. denied* 808 F.3d 1013 (5th Cir. 2015).

*Sunderland v. Ernst & Young, LLP*, 726 F.3d 290 (2d Cir. 2013); *see also Bekele v. Lyft, Inc.*, No. 15-11650-FDS, 2016 WL 4203412 (D. Mass. Aug. 9, 2016).

The Seventh and Ninth Circuit have taken the position that a class or concerted action waiver in an employment agreement violates the NLRA because it interferes with a plaintiff's substantive right to engage in collective activity. *See Morris v. Ernst & Young, LLP,* No. 13-16599, 2016 WL 4433080 (9th Cir. Aug. 22, 2016) (vacating district court's order compelling individual arbitration under an employee agreement which contained a concerted action waiver); *Lewis v. Epic Systems Corp.*, 823 F.3d 1147 (7th Cir. 2016) (holding that an arbitration agreement mandating individual arbitration violated Section 7 of the NLRA); *see also Gaffers v. Kelly Services, Inc.,* No. 16-10128, 2016 WL 4445428 (E.D. Mich. Aug. 24, 2016); *Tigges v. AM Pizza,* Nos. 16-10136-WGY & 16-10474-WGY, 2016 WL 4076829 (D. Mass. July 29, 2016); *Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp. 3d 1243, 1254 (C.D. Cal. 2016).

The disagreement centers largely on whether Section 7's right to engage in collective activity is considered a substantive right or a procedural one. The Fifth Circuit, in rejecting the NLRB's conclusion, reasoned that a Rule 23 class action is a procedural device used to bring substantive claims rather than a substantive right in and of itself. *Horton II*, 737 F.3d at 357. It noted that there is no substantive right to use class action procedures under other statutory schemes, including the ADEA and the FLSA. *Id.* (citing cases). Since "[n]either the NLRA's statutory text nor its legislative history contains a congressional command against application of the FAA,"

the Fifth Circuit concluded that the class action waiver was enforceable as part of the agreement between the parties. *Id*. at 361-62.

In contrast, the Seventh Circuit in *Lewis* pointed out that the right to engage in collective action "lies at the heart of the restructuring of employer/employee relationships that Congress meant to achieve" when it enacted the NLRA. *Lewis,* 823 F.3d at 1160. The *Lewis* court found support for this proposition in the structure of the NLRA, reasoning that "Section 7 is the NLRA's *only* substantive provision" and that "[e]very other provision of the statute serves to enforce the rights Section 7 protects." *Id*. The Seventh Circuit distinguished other statutory schemes, like the ADEA and the FLSA, on the grounds that although those schemes "allow class or collective actions, they do no guarantee collective process." *Id*. at 1161. The Ninth Circuit likewise found that Section 7 of the NLRA established substantive rights. It reasoned that "[t]he text of the Act confirms the central role of § 7" because "that section establishes the '*Right* of employees as to organization.'" *Morris*, 2016 WL 4433080, at *8 (quoting 29 U.S.C. § 157). Thus, "[w]ithout § 7, the Act's entire structure and policy flounder." *Id*.

The distinction is critical because substantive rights cannot be waived in an arbitration agreement. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute . . . ."). Having concluded that the class action waivers were illegal under the NLRA, it was a short step for the Seventh and Ninth Circuits to find that the waivers were unenforceable under the FAA's

savings clause. *Lewis*, 823 F.3d at 1159 ("Because the NLRA renders [the defendant's] arbitration provision illegal, the FAA does not mandate its enforcement."); *Morris*, 2016 WL 4433080, at \*8 ("[W]hen an arbitration contract professes to waive a substantive federal right, the saving clause of the FAA prevents the enforcement of that waiver.").

I agree with the Seventh and Ninth Circuits. The First Circuit has held that collective legal action by employees constitutes concerted activity under Section 7.[3] *See Leviton Mfg. Co. v. NLRB*, 486 F.2d 686, 689 (1st Cir. 1973) ("[T]he filing of a labor related civil action by a group of employees is ordinarily a concerted activity protected by § 7, unless the employees acted in bad faith."). The text and structure of the NLRA demonstrate that the rights protected by Section 7 are substantive. Indeed, the "very essence of labor right[s] under the . . . National Labor Relations Act is collective action." *Tigges*, 2016 WL 4076829, at \*13 (quotations omitted). A provision in an arbitration agreement that interferes with these substantive rights is unlawful. *See Morris*, 2016 WL 4433080, at \*9 (characterizing an arbitration provision that waived a substantive right as "illegal" because "a ban on the pursuit of concerted work-related legal claims interferes with a core, substantive right"). And the FAA's

---

[3]    Even if "concerted activity" could be read as ambiguous when applied to collective legal action, the NLRB's "interpretations of ambiguous provisions of the NLRA are 'entitled to judicial deference.' " *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1153 (7th Cir. 2016) (quoting *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 536 (1992)). The NLRB has concluded that collective legal action by employees constitutes "concerted activity." *Horton I*, 357 NLRB at 2279 ("Clearly, an individual who files a class or collective action regarding wages, hours or working conditions, whether in court or before an arbitrator, seeks to initiate or induce group action and is engaged in conduct protected by Section 7."). The NLRB's interpretation is "not only persuasive, but at the very least 'reasonably defensible.' " *Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp. 3d 1243, 1258 (C.D. Cal. 2016) (quoting *Sure–Tan, Inc. v. NLRB*, 467 U.S. 883, 891 (1984)).

savings clause prevents the enforcement of an unlawful provision. *Lewis*, 823 F.3d at 1157 ("Because the provision at issue is unlawful under Section 7 of the NLRA, it is illegal, and meets the criteria of the FAA's saving clause for nonenforcement."). Thus, the class action waiver at issue here—which bars employees from exercising their right to engage in collective action and requires all disputes to be brought "on an individual basis only"—will not be enforced.[4] SRS Agreement 5, section C.

### B. Whether the Opt-Out Provision Saves the Class Action Waiver

Although I agree with the conclusion reached by the Seventh and Ninth Circuits, I must go on to assess whether this case is nevertheless distinguishable on the grounds that the SRS Agreement contained an opt-out provision. The Plaintiffs must show that CMS's inclusion of the class action waiver "interfere[d] with, restrain[ed], or coerc[ed]" the Plaintiffs in the exercise of their rights under Section 7 to engage in concerted activities. 29 U.S.C. § 158. In this case, the opt-out provision gave the Plaintiffs the right to completely erase the entire arbitration provision, including the class action waiver.

In a case not cited by the parties in their briefs, the Ninth Circuit came to the conclusion that the employer did not interfere with the employee's Section 7 rights because the contract contained a provision allowing the employee to opt out of the

---

[4]    As the Ninth Circuit explained in *Morris*, "[a]t its heart, this is a labor law case, not an arbitration case." 2016 WL 4433080, at *10. In other words, the flaw in the SRS Agreement is not that it requires employees to arbitrate disputes. The illegality defense is not limited to arbitration. The problem lies in the SRS Agreement's bar on concerted activity. The SRS Agreement "would face the same NLRA troubles if [CMS] required its employees to use *only* courts, or *only* rolls of the dice or tarot cards, to resolve workplace disputes—so long as the exclusive forum provision is coupled with a restriction on concerted activity in that forum." *Id.*

arbitration agreement. *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1075-76 (9th Cir. 2014). Johnmohammadi brought a class action suit seeking to recover unpaid overtime wages, and Bloomingdale's moved to compel arbitration. When Johnmohammadi was hired as a sales associate, she was given a set of documents describing Bloomingdale's dispute resolution program. Those documents contained an arbitration requirement and a class action waiver. The documents also included an opt-out option that, like the one at issue here, required the employee to return a form to the employer within 30 days if the employee wanted to opt out of the terms of the arbitration agreement. Johnmohammadi did not opt out.

Like the Plaintiffs here, Johnmohammadi argued that the class action waiver was unenforceable because it interfered with her rights under Section 7 of the NLRA to engage in collective action. The Ninth Circuit decided it did not need to reach that question, finding that there was no evidence that Bloomingdale's interfered with, restrained, or coerced her in the exercise of her right to file a class action. In making those findings, the court stated that "Bloomingdale's gave her the option of participating in its dispute resolution program, which would require her to arbitrate any employment-related disputes on an individual basis . . . . If she wanted to retain th[e] [right to file a class action], nothing stopped her from opting out of the arbitration agreement." *Id.*; s*ee also Morris*, 2016 WL 4433080, at *4 n.4 (citing *Johnmohammadi* for the proposition that no NLRA violation exists if the employee could have opted out of the dispute resolution agreement); *Bruster v. Uber Technologies Inc.,* No. 15-2653, 2016 WL 4086786, at *3 (N.D. Ohio, Aug. 2, 2016)

("*Lewis* analyzed and invalidated a mandatory arbitration provision . . . . In this case, the Uber agreement allowed drivers like Plaintiff to opt-out of the arbitration provisions within thirty days of signing up to drive with Uber . . . . [The agreement therefore] does not impinge on any NLRA rights Plaintiff has, if any, because Plaintiff Bruster could have opted out of arbitration.").

However, a district court within the First Circuit, in an opinion published at the end of July, rejected *Johnmohammadi* and held that an opt-out provision should not save a class action waiver in an employment contract. *Tigges,* 2016 WL 4076829, at *12-13. In *Tigges,* Judge Young discussed the fact that "the NLRB has itself ruled that arbitration agreements with employees that contain opt-out agreements still violate the NLRA." *Id*. at *15 (citing *On Assignment Staffing Servs., Inc.*, 362 NLRB No. 189 (Aug. 27, 2015), *rev'd per curiam, On Assignment Staffing Servs., Inc.*, No. 15-60642, 2016 WL 3685206 (5th Cir. June 6, 2016)).[5]

The employment agreement in *On Assignment* shares a number of similar provisions with the SRS Agreement. It requires disputes to be resolved only by an arbitrator, contains a class action waiver, and has an opt-out clause, albeit with a ten-day deadline. *On Assignment*, 362 NLRB No. 189, at *3. The NLRB concluded that the agreement interfered with the employee's Section 7 right to engage in concerted activity and stated:

> While [On Assignment's] employees may *retain* their Section 7 rights by following the prescribed opt-out procedure, Section 8(a)(1)'s reach is not limited to employer conduct that completely prevents the exercise of

---

[5]   *On Assignment*'s reversal by the Fifth Circuit was a foregone conclusion based on its position in *Horton II*.

Section 7 rights. Instead, the long-established test is whether the employer's conduct *reasonably tends* to *interfere* with the free exercise of employee rights under the Act.

*On Assignment*, 362 NLRB No. 189, at *5. The NLRB found that the agreement interfered with the employees' Section 7 rights in two ways. First, the NLRB determined that the employer burdened its employees' exercise of their Section 7 rights by requiring them to take affirmative steps within the allotted time in order to retain their rights. *Id.* [6] The NLRB noted:

> A rule requiring employees to obtain their employer's permission to engage in protected concerted activity is unlawful, even if the rule does not absolutely prohibit such activity and regardless of whether the rule is actually enforced. Even a rule requiring only advance notice that an employee will engage in protected concerted activity is an impediment to the exercise of Section 7 rights.

*Id.* at *6 (internal citations omitted).

Second, the NLRB took issue with the requirement that an employee wishing to exercise his opt out rights was required to go on record with the employer or prospectively waive them forever.

> The Board has long held that an "employee is entitled to keep from his employer his views concerning unions, so that the employee may exercise a full and free choice on the point, uninfluenced by the employer's knowledge or suspicion about those views and the possible reaction toward the employee that his views may stimulate in the employer."

*Id.* at *6 (citation omitted).

---

[6]    As is true in the SRS agreement, the employees of On Assignment had to send by mail or hand-deliver a signed and dated notice of their intention to opt out within the requisite period. "Even employees who wish to retain their Section 7 rights will lose them unless they correctly follow the specified procedures." *On Assignment Staffing Servs., Inc.*, 362 NLRB No. 189, at *5 (Aug. 27, 2015).

The NLRB's decision on opt-out provisions is entitled to judicial deference. Because the NLRB is charged with administering the NLRA, *see Lechmere, Inc. v. NLRB,* 502 U.S. 527, 536 (1992), and because Congress did not directly address whether a class action waiver with an opt-out provision constitutes "interference" under Section 8, the NLRB's decision on this point is entitled to deference under the *Chevron* doctrine as long as it is based on a permissible construction of the NLRA. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 844-45 (1984). Like Judge Young, I find that the NLRB's interpretation of the NLRA on this issue to be not only "permissible" but "eminently reasonable." *Tigges,* 2016 WL 4076829, at *16. Accordingly, I will defer to the NLRB's interpretation. *See NLRB v. Hilliard Development Corp.,* 187 F.3d 133, 140 (1st Cir. 1999) ("If . . . the statute is ambiguous or silent with respect to a specific issue, we will defer to the Board's interpretation so long as that interpretation is a 'permissible' one." (quoting *Chevron*, 467 U.S. at 843)).

The question of remedy remains. The SRS Agreement provides that:

> In any case in which (1) the dispute is filed as a class, collective, representative or private attorney general action and (2) a civil court of competent jurisdiction finds all or part of the Class Action Waiver *unenforceable*, the class, collective, representative and/or private attorney general action to that extent must be litigated in a civil court of competent jurisdiction, but the portion of the Class Action Wavier that is enforceable shall be enforced in arbitration.

SRS Agreement 5, section C (emphasis added). Because I find that the class action waiver provision in the SRS Agreement is unenforceable, at least at this stage of the litigation, the case will proceed in this court. Given my conclusion, there is no need to reach the Plaintiffs' effective vindication or scope arguments.

14

One final point must be made. In order for the Plaintiffs to fall within the protection of the NLRA, they must be employees. Because the Complaint asserts that CMS acted as a joint employer of the Plaintiffs, Compl. ¶ 16, I assume for the sake of this motion that the employer/employee relationship exists. However, even the Plaintiffs acknowledge that CMS is in an unusual position in this litigation.[7] Should the Plaintiffs fail to establish CMS as a joint employer, then the question of the legality of the class action waiver may need to be readdressed.

## CONCLUSION

In sum, I find that the class action wavier is unenforceable under the NLRA. For the reasons stated above, the Court **DENIES** the Defendant's Motion to Compel Arbitration.

SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 29th day of September, 2016.

---

[7]    At oral argument, Plaintiffs' counsel suggested that there was no direct employer/employee relationship between CMS and the Plaintiffs. *See* Tr. of Proceedings at 4-7 (ECF No. 37).