## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| ROBERT CURTIS and ROBERT LOWELL on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Docket No. 1:15-cv-487-NT |
| CONTRACTOR MANAGEMENT SERVICES, LLC; 3RD PARTY LOGISTICS ME, LLC; and MICHAEL WILLIAMS, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER ON DEFENDANTS' MOTIONS TO COMPEL ARBITRATION

Plaintiffs Robert Curtis and Robert Lowell filed this putative class and collective action against Defendants 3RD Party Logistics ME, LLC ("**3PL**") and Michael Williams (together the "**3PL Defendants**") and Defendant Contractor Management Services, LLC ("**CMS**") to assert federal and state wage and hour law violations and related state-law tort claims. Before me are CMS's renewed motion to compel arbitration ("**CMS Motion**") (ECF No. 70) and the 3PL Defendants' motion to compel arbitration ("**3PL Motion**"). (ECF No. 71.) For the reasons that follow, I **GRANT** the Defendants' motions.

## PROCEDURAL BACKGROUND

On November 25, 2015, the Plaintiffs filed their initial Complaint in this action solely against CMS. On April 25, 2016, CMS moved to compel arbitration of the Plaintiffs' claims and for a stay of proceedings in this Court. At the time of CMS's

motion, the First Circuit had yet to decide whether employee arbitration agreements containing class action waivers were enforceable in light of the National Labor Relations Act ("**NLRA**"), and the Circuits were split on that issue. On September 29, 2016, I denied CMS's motion to compel arbitration, joining those courts that had found that class action waivers like those in the CMS Agreement violated the NLRA and therefore were unenforceable under the savings clause of the Federal Arbitration Act ("**FAA**"). (ECF No. 42.)

On October 17, 2016, CMS appealed my order on the motion to compel arbitration to the First Circuit. (ECF No. 45.) Shortly thereafter, on November 3, 2016, the Plaintiffs filed a First Amended Complaint ("**FAC**") to add claims against the 3PL Defendants. (ECF No. 50.) On February 16, 2017, I stayed the action as against the 3PL Defendants until CMS's appeal was resolved. (ECF No. 63.)

While CMS's appeal was pending, the United States Supreme Court decided *Epic Systems Corp. v. Lewis*, which held that class action waivers in employee arbitration agreements do not violate the NLRA and are enforceable under the FAA. 584 U.S. __, 138 S.Ct. 1612 (2018). On June 14, 2018, the First Circuit vacated my September 29, 2016, order in light of *Epic Systems* and remanded this action to me for further proceedings. (ECF No. 64.) On July 11, 2018, I directed CMS to resubmit its motion to compel arbitration. On August 10, 2018, CMS filed its renewed motion and the 3PL Defendants filed a motion to compel arbitration of the claims asserted against them in the FAC. CMS Mot.; 3PL Mot.

## FACTUAL BACKGROUND

Curtis and Lowell, both Maine residents, worked as delivery drivers for Scholarship Storage, Inc., which did business under the name Business as Usual ("**BAU**"), and subsequently for 3PL. CMS is an Arizona-based company that markets itself as the "leading full-service firm for companies utilizing Independent Contractors." FAC ¶ 44. The Plaintiffs allege that CMS provided a number of services for BAU and later for 3PL, including drafting employment contracts, processing payroll checks, and "taking out deductions for equipment drivers were . . . required to lease or purchase" and for other expenses. *See* FAC ¶ 45. CMS also allegedly deducted a payroll processing fee from the Plaintiffs' BAU and 3PL paychecks. FAC ¶ 45. The Plaintiffs allege that CMS and 3PL improperly classified the Plaintiffs and their fellow drivers as independent contractors and, as a result, failed to adequately compensate the Plaintiffs for their hours worked and required the Plaintiffs to remit fees and to bear costs that they should not have been required to pay. FAC ¶ 1.

CMS seeks to compel arbitration pursuant to a "System Resource Subscription" agreement entered into between CMS and each of the Plaintiffs (the "**CMS Agreement**"). CMS Ex. B (ECF No. 70-4); CMS Ex. C (ECF No. 70-5). CMS asserts that both Plaintiffs accessed CMS's online platform, ICMPower, opened the CMS Agreement, clicked through each page of it, and electronically signed the agreement. Stultz Decl. ¶¶ 5-8. (ECF No. 20-1).

The 3PL Defendants have moved to compel arbitration under an "Independent Contractor Owner/Operator Agreement" purportedly signed by Defendant Williams on behalf of 3PL and by each of the Plaintiffs (the "**3PL Agreement**"). 3PL Ex. A

(ECF No. 71-2); 3PL Ex. B (ECF No. 71-3). The Plaintiffs assert that they do not recall signing the 3PL Agreement. Opp'n to 3PL Mot. 4 (ECF No. 73). The 3PL Defendants assert that the Plaintiffs accessed, reviewed, and signed the 3PL Agreement using CMS's ICM Power online platform. Stultz Decl. ¶¶ 13-14 (ECF No. 75-1).

The CMS Agreement and the 3PL Agreement contain nearly-identical arbitration provisions (the "**Arbitration Provisions**") in which the parties agree to resolve certain disputes through arbitration, including "disputes arising out of or related to [the Plaintiffs'] relationship with" CMS or 3PL and, more specifically:

> without limitation, . . . claims regarding any city, county, state or federal wage-hour law, . . . compensation, meal or rest periods, expense reimbursement, uniform maintenance, training, termination . . . and claims arising under the . . . Fair Labor Standards Act . . . and state statutes, if any, addressing the same or similar subject matters, and all other similar federal and state statutory and common law claims (excluding workers' compensation, state disability insurance and unemployment insurance claims).

CMS Agreement 4 ¶ i; 3PL Agreement 13 ¶ A(i).

The Arbitration Provisions set out the procedures for arbitration, including a requirement that "[e]xcept as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of the parties," CMS Agreement 6 ¶ E; 3PL Agreement 15 ¶ F, and the following fee and cost provision:

> **ATTORNEYS' FEES AND ARBITRATION COSTS:** Each party will pay the fees for its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. Costs incidental to the arbitration, including the cost of the Arbitrator and the meeting site ("Arbitration Costs") will be borne by [the parties] equally, unless otherwise required by applicable law, as determined by the Arbitrator,

and any dispute regarding a party's obligation to pay Arbitration Costs will be determined by the Arbitrator. In the event I contend that, as a matter of law, I am not responsible for payment of any arbitration Costs, I will have no obligation to pay any portion of the contested Arbitration Costs until, and only if, the Arbitrator determines that I am responsible for such costs. If necessary for arbitration of the dispute, [CMS/3PL] agrees to cover the amount of the Arbitration Costs contested by me until such time as the Arbitrator determines payment responsibility. If the Arbitrator determines that I am responsible for any amount of the Arbitration Costs already paid by [CMS/3PL], then I will remit payment of that amount to [CMS/3PL] within 30 days of the Arbitrator's determination.

CMS Agreement 5-6 ¶ D; *see* 3PL Agreement 14 ¶ E.

The Arbitration Provisions each include a paragraph headed "**THIRTY-DAY OPT-OUT PERIOD**" that states:

If I do not want to be subject to this Arbitration Provision, I may opt out of this Arbitration Provision by notifying [CMS/3PL] in writing of my desire to opt out of this Arbitration Provision, which writing must be dated, signed and submitted by U.S. Mail or hand delivery to [CMS/3PL's address]. In order to be effective, the writing must clearly indicate my intent to opt out of this Arbitration Provision and the envelope containing the signed writing **must be post-marked within 30 days** of the date I sign this [agreement]. . . . Should I not opt out of this Arbitration Provision within the 30-day period, [CMS/3PL] and I will be bound by the terms of this Arbitration Provision.

CMS Agreement 6 ¶ G; *see* 3PL Agreement 15 ¶ H. The Arbitration Provisions also contain severability clauses, which state that "[i]n the event that any portion of this Arbitration Provision is deemed unenforceable, the remainder of this arbitration provision will be enforceable." CMS Agreement 6 ¶ H; 3PL Agreement 15 ¶ I.

The only relevant difference between the arbitration provisions in the CMS Agreement and in the 3PL Agreement is their choice of forum. The CMS Agreement states that the "location of the arbitration proceeding must be in Maricopa County, Arizona, unless the parties to the arbitration agree in writing otherwise." CMS

Agreement 5 ¶ A. In contrast, the 3PL Agreement provides that the "location of the arbitration proceeding may be no more than 45 miles from the geographic area where [Curtis and/or Lowell] performed delivery services arranged by [3PL], unless each party to the arbitration agrees in writing otherwise." 3PL Agreement 14 ¶ B.

## LEGAL STANDARD

The FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. It also provides for the stay of suits already in federal court pending arbitration. *Id.* § 3.

Federal courts will grant a motion to dismiss or stay a case and compel arbitration pursuant to the FAA when "(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration." *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 171 (1st Cir. 2008) (quoting *Bangor Hydro-Elec. Co. v. New England Tel. & Tel. Co.*, 62 F. Supp. 2d 152, 155 (D. Me. 1999)).

## DISCUSSION

The Defendants assert that the Plaintiffs' claims must be submitted to arbitration under the binding terms of the Defendants' respective agreements with the Plaintiffs. "A party seeking to compel arbitration 'must demonstrate that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes

within the clause's scope.' " *Nat'l Fed'n of the Blind v. The Container Store, Inc.*, 904 F.3d 70, 80 (1st Cir. 2018) (quoting *Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 474 (1st Cir. 2011)). Through their motions, the Defendants have presented signed agreements between themselves and the Plaintiffs that purport to bind both parties and that allow either party to invoke arbitration, and the Defendants have asserted that the Plaintiffs' claims come within the Arbitration Provisions' scope.

With respect to 3PL, the Plaintiffs contend that they cannot be compelled to arbitrate under the 3PL Agreement because they did not sign it and no valid contract was ever formed. Opp'n to 3PL Mot. 3-4. The Plaintiffs further argue that the 3PL Agreement's arbitration provisions are invalid because enforcing them would prevent the Plaintiffs from effectively vindicating their statutory rights or, alternatively, because the arbitration provisions are unconscionable under applicable state law. Opp'n to 3PL Mot. 5-12.

As to CMS, the Plaintiffs do not contest that they signed the CMS Agreement. Opp'n to CMS Mot. 1-2 (ECF No. 72). The Plaintiffs do argue that, as with the 3PL Agreement, the CMS Agreement's arbitration provisions prevent the Plaintiffs from vindicating their rights or are unconscionable. Opp'n to CMS Mot. 4-9. Anticipating the Plaintiffs' arguments, CMS has executed a covenant not to enforce the CMS Agreement's cost-splitting, forum selection, and confidentiality provisions. CMS Ex. A (ECF No. 70-1).

# I.     The 3PL Agreement

## A.     Contract Formation

" '[A] court should not compel arbitration unless and until it determines that the parties entered into a validly formed and legally enforceable agreement covering the underlying claims(s).' " *Nat'l Fed'n of the Blind*, 904 F.3d at 80 (quoting *Escobar-Noble v. Luxury Hotels Int'l of P.R., Inc.*, 680 F.3d 118, 121 (1st Cir. 2012)). " 'To satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce.' " *Id.* (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010)). I assess issues of contract formation under the law of the state that governs the agreement, which in the case of the 3PL Agreement is New York. *See id.*[1]

The Plaintiffs assert that no contracts were formed between themselves and the 3PL Defendants.[2] In support of this point, the Plaintiffs aver that they do not recall signing the 3PL Agreement. Opp'n to 3PL Mot. 3-4. The Plaintiffs also state that the 3PL Defendants had access to the Plaintiffs' electronic signatures, thereby

---

[1]     The 3PL Agreement provides that it will be governed by the law of the state where the "Broker," 3PL, is headquartered. 3PL Agreement at 9 ¶ 15. The 3PL Agreement states that 3PL has its principal place of business in New York. 3PL Agreement 2. The Plaintiffs therefore assert, and the 3PL Defendants do not dispute, that New York law governs the 3PL Agreement.

[2]     I note that the Plaintiffs appear to be challenging the formation of the entire 3PL Agreement, rather than its arbitration provisions alone. The First Circuit has "yet to decide whether challenges regarding the formation of a contract, where arbitration is but one provision in that contract, should be decided by an arbitrator or a court." *Nat'l Fed'n of the Blind*, 904 F.3d at 86. Here, however, the Defendants do not argue that the question of formation is properly for the arbitrator, and in any event I agree with those courts that have decided that it would be inappropriate to require a party to submit to the jurisdiction of an arbitrator where that party never entered into a contract of any kind. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006) (collecting cases); *Sphere Drake Ins. Ltd. v. All Am. Ins. Co.*, 256 F.3d 587, 590-91 (7th Cir. 2001) (collecting cases).

implying, although never directly asserting, that the signatures on the 3PL Agreement are electronic forgeries. Opp'n to 3PL Mot. 4-5.

The 3PL Defendants respond by providing the declaration of Mr. Greg Stultz, a CMS employee, and a set of transaction records from CMS. Mr. Stultz's declaration states that CMS provides and manages "ICMPower," the digital platform through which the Plaintiffs purportedly signed the 3PL Agreement. Stutlz Decl. ¶ 4 (ECF No. 75-1). Mr. Stultz explains the process through which a user may access and sign an agreement using ICMPower. The user must first register for the platform by submitting her name, date of birth, and social security number. Stutlz Decl. ¶ 8. Then the user must create a unique electronic signature. Stutlz Decl. ¶ 9. To do that, the user must correctly answer three of four security questions related to her personal history. Stutlz Decl. ¶ 9. Once the electronic signature is created, in order to sign a document, the user must log in to ICMPower. Stutlz Decl. ¶ 11. ICMPower records users' interactions with the system, including registration, identity verification, and the affixing of an electronic signature to a document. Stutlz Decl. ¶ 11. Mr. Stultz asserts, and the records he provides corroborate, that both of the Plaintiffs completed ICMPower's identity verification process, created a unique electronic signature, and later reviewed and electronically signed the 3PL Agreement. Stutlz Decl. ¶¶ 14-15; *see* 3PL Ex. B (ECF No. 75-3).[3]

---

[3]     I note that the CMS Defendants submitted a similar explanation of the ICMPower system with their motion to compel arbitration, as the Plaintiffs also signed the CMS Agreement using that system. Stutlz Decl. (ECF Nol. 20-1); *see also* Stutlz Decl. (ECF No. 70-2). I further note that the Plaintiffs have not challenged the validity of their signatures to the CMS Agreement even though the ICMPower transaction logs suggest that Plaintiff Curtis electronically signed the CMS Agreement just four minutes after electronically signing the 3PL Agreement. 3PL Ex. B at 4-6 (ECF No. 75-3).

This evidence overcomes the Plaintiffs' unsupported implication that 3PL forged the Plaintiffs' signatures. The Plaintiffs' remaining argument, that they do not recall authorizing anyone to affix their electronic signatures to the 3PL Agreement, does not suffice to call the agreement's formation into question under New York law. *Victorio v. Sammy's Fishbox Realty Co., LLC*, No. 14 CIV. 8678 (CM), 2015 WL 2152703, at *11 (S.D.N.Y. May 6, 2015) (applying New York law, rejecting challenge to arbitration agreement's existence where plaintiffs' sole argument was that they did not recall signing the agreement); *see also Tsadilas v. Providian Nat'l Bank*, 13 A.D.3d 190, 190 (N.Y. App. Div. 1st Dep't 2004) ("Plaintiff is bound by the arbitration provision even if she did not read it.").

## B.    Effective Vindication of Statutory Rights

Having found that the 3PL Agreement binds the Plaintiffs, I turn to whether its arbitration provisions are otherwise invalid.[4] The FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Plaintiffs bear the "heavy burden" of proving unenforceability. *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 17 (1st Cir. 1999).

The Plaintiffs claim that the 3PL Agreement's arbitration provisions are invalid because they prevent the Plaintiffs from vindicating their statutory rights. Specifically, the Plaintiffs assert that (1) the arbitration provisions require the

---

[4]     Generally, while "[a] challenge to the validity of an entire contract containing an arbitration provision must go to an arbitrator . . . , a challenge to the validity of the arbitration provision itself must be decided by the court." *Nat'l Fed'n of the Blind v. The Container Store, Inc.*, 904 F.3d 70, 81 (1st Cir. 2018) (citation omitted).

Plaintiffs to pay their own attorneys' fees and to split the costs of arbitration with the Defendants, which the Plaintiffs say conflicts with their rights under the FLSA to recover fees and costs if they are ultimately successful; and (2) the Plaintiffs' shares of the arbitration costs are so high when compared to the Plaintiffs' means that those expenses would effectively prevent the Plaintiffs from accessing the arbitral forum.

Courts may enforce an arbitration agreement only "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) (quoting *Mitsubishi Motors v. Soler-Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)). The Supreme Court has clarified that this "effective vindication" exception "finds its origin in the desire to prevent 'prospective waiver of a party's *right to pursue* statutory remedies.' " *Id.* (quoting *Mitsubishi Motors*, 473 U.S. at 637 n.19). The exception "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights," and "would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable." *Id.*

The Plaintiffs insist that the 3PL Agreement's arbitration provisions conflict with the FLSA's requirement that courts "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). No such conflict exists. The arbitration provisions specify that "[e]ach party will pay the fees for its own attorneys, *subject to any remedies to which that party may later be entitled under applicable*

*law*." 3PL Agreement 14 ¶ E (emphasis added). The arbitration provisions further state that "[c]osts incidental to the arbitration, including the cost of the Arbitrator and the meeting site . . . will be borne by [the parties] equally, *unless otherwise required by applicable law*." 3PL Agreement 14 ¶ E (emphasis added). Both of these clauses allow for Plaintiffs to collect any fees and costs to which they may be entitled under applicable law—which here would include the FLSA.[5] The arbitration provisions therefore do not require the Plaintiffs to relinquish any right to fees or costs. *See Escobar-Noble*, 680 F.3d at 123-24 (when assessing an effective vindication argument, "[i]n the absence of . . . a direct conflict" between the statutory requirement and the arbitration agreement "the inquiry ends"); *see also Foshey v. Home Depot USA, Inc.*, No. CV 12-11866-DJC, 2013 WL 12210107, at *6 (D. Mass. Aug. 26, 2013) (no conflict between statute's fee award requirement and arbitration agreement's fee-shifting provision where agreement provided that the defendant had to pay plaintiff's fees "to the extent required by law").[6]

---

[5]    In addition to these caveats, a savings clause in the arbitration provisions states that "no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Arbitration Provision." 3PL Agreement 15 ¶ F.
    These provisions render *Nesbitt v. FCNH, Inc.*, 811 F.3d 371 (10th Cir. 2016), on which the Plaintiffs rely, inapposite. The arbitration agreement at issue in *Nesbitt* barred the plaintiff from seeking attorneys' fees or costs. *Id.* at 378. The court held that the defendants' proposed workaround—applying to the arbitrator for deferral or reduction of costs under the rules of the American Arbitration Association—was not adequate to ensure that the plaintiff would receive any fees to which she was statutorily entitled. *Id.* at 379. Here, however, the arbitration provisions themselves entitle the Plaintiffs to any remedies that they could receive from this court, including costs and attorneys' fees under the FLSA.

[6]    To the extent the Plaintiffs' concern is that the arbitrator will misread the arbitration provisions' unambiguous fee and cost provisions and disallow the Plaintiffs from collecting remedies to which they are entitled, the Plaintiffs' issue is with the arbitral process and not this particular agreement—a grievance that must be addressed to Congress and not to the courts. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621-22 (2018) ("You might wonder if the balance Congress struck in 1925 between arbitration and litigation should be revisited in light of more contemporary developments.

Moving on to the Plaintiffs' second argument: "[W]here, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000). On this point, the Plaintiffs refer me to the declarations that they submitted with their opposition to CMS's initial motion to compel arbitration under the CMS Agreement. Opp'n to 3PL Mot. 8. In their declarations, the Plaintiffs represented that they could "reasonably expect" their half of the arbitration costs to be between $ 4,000 and $ 5,000 for a single-day arbitration, as compared to the $ 400 filing fee that the two Plaintiffs split to bring this action in federal court. Am. Curtis Decl. ¶ 9 (ECF No. 26); Am. Lowell Decl. ¶ 8 (ECF No. 26-1). The Plaintiffs further represented that Curtis's weekly pre-tax take-home pay was approximately $ 754, and Lowell's was approximately $ 641. Am. Curtis Decl. ¶ 4; Am. Lowell Decl. ¶ 4.

Again, the Plaintiffs' argument is forestalled by the law of this Circuit. The 3PL Agreement does not definitively require the Plaintiffs to pay the costs of arbitration. Instead, the arbitration provisions permit the Plaintiffs to contest costs ahead of arbitration, in which case 3PL must bear those expenses until the arbitrator has decided whether the costs may lawfully be imposed. 3PL Agreement 14 ¶ E. Any assumption that the Plaintiffs will be required to pay costs is, therefore, speculative, and it is not the case that arbitration costs will keep the Plaintiffs from reaching the

You might even ask if the Act was good policy when enacted. But all the same you might find it difficult to see how to avoid the statute's application.").

arbitral forum. In similar circumstances, the First Circuit has allowed actions to proceed to arbitration with the understanding that the Plaintiffs may challenge an unlawful imposition of forum costs after the close of the proceedings. *Rosenberg*, 170 F.3d at 15-16; *Thompson v. Irwin Home Equity Corp.*, 300 F.3d 88, 91-92 (1st Cir. 2002).[7] I share my colleague's reservations that this "wait and see" approach strongly discourages workers and other plaintiffs with limited resources and small claims from seeking to enforce their rights. *See Fusco v. Plastic Surgery Ctr., P.A.*, No. 2:15-CV-460-DBH, 2016 WL 3077843, at *1 (D. Me. May 31, 2016) (Hornby, J.) (citing the Sixth Circuit's persuasive analysis in *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 657-65 (6th Cir. 2003)). I am, however, bound to follow the law of this Circuit. *Id.*[8] The Plaintiffs' effective vindication arguments fail.

---

[7]    Neither *Thompson* nor *Rosenberg* appears to have been abrogated. In *Kristian v. Comcast Corp.*, 446 F.3d 25, 51 (1st Cir. 2006), and *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 12-13 (1st Cir. 2009), the First Circuit found that when a plaintiff claims that arbitration costs are so high as to prohibit the plaintiff from even accessing the arbitral forum, that creates a question of arbitrability to be decided by the district court. *Awuah*, 554 F.3d at 12-13 (remanding for a determination of whether high costs of arbitration would prevent access to the forum and thereby render the arbitration agreement illusory); *Kristian*, 446 F.3d at 52-53 (finding that arbitration agreement's absolute bar on recovery of attorneys' fees and costs would burden plaintiffs with prohibitive arbitration costs and severing the bar provision from the agreement). These decisions are not applicable here, where the arbitration provisions allow plaintiffs to avoid paying forum fees until the arbitrator decides whether cost-splitting is permissible.

[8]    Even setting aside the 3PL Agreement's cost-shifting provision, the Plaintiffs' evidentiary showing is inadequate. The Plaintiffs offer no support for their assertion that they can "reasonably expect" their arbitration costs to run between $ 4,000 and $ 5,000. *See Green Tree*, 531 U.S. at 90 n.6 (rejecting plaintiff's unsupported assumption that the American Arbitration Association would conduct her arbitration at a rate of $ 700 per day). Further, in supplemental declarations submitted in response to the motions at bar, the Plaintiffs represented that they are no longer employed by 3PL but failed to provide updated information regarding their income. Supp. Curtis Decl. ¶ 9 (ECF No. 73-1); Supp. Lowell Decl. ¶ 9 (ECF No. 73-2). At this juncture, therefore, the Plaintiffs have not established their inability to pay for arbitration.

## C.     Unconscionability

The Plaintiffs argue that the confidentiality and cost-shifting clauses of the 3PL Agreement are unconscionable and unenforceable. The Plaintiffs further argue that those clauses render the 3PL Agreement's arbitration provisions unconscionable in their entirety, because by including multiple unconscionable provisions in one arbitration agreement, 3PL has discouraged the Plaintiffs (and others similarly situated) from seeking relief to which they might otherwise be entitled.

Section two of the FAA "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). To evaluate the Plaintiffs' unconscionability arguments, I look to New York law.

New York's courts consider an agreement unconscionable if it is "so grossly unreasonable as to be unenforc[able] because of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *King v. Fox*, 851 N.E.2d 1184, 1191 (N.Y. 2006). In line with this definition, the New York Court of Appeals has explained that "[a] determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made." *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988) (quoting *Matter of State of New York v. Avco Fin. Serv.*, 406 N.E.2d 1075, 1078 (N.Y. 1980)). New York's courts will break from this rule only in "exceptional cases where a provision of [a]

15

contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." *Id.* at 829.

When courts assess procedural unconscionability, "the focus is on such matters as the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." *Id.* at 828 (citations omitted). For substantive unconscionability, courts analyze "the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged." *Id.* at 829.

The Plaintiffs have not shown that the 3PL Agreement's arbitration provisions are procedurally unconscionable under New York law. The 3PL Agreement provided the Plaintiffs with 30 days to consider the contracts and to decide whether to opt out of the arbitration provisions. The agreement attaches no adverse consequences to the decision to opt out, and the Plaintiffs have not offered any evidence that they faced outside pressure to accept the arbitration provisions. "Courts applying New York law have considered an opt-out provision as an important, if not dispositive, factor in rejecting challenges of procedural unconscionability." *Kai Peng v. Uber Techs.*, Inc., 237 F. Supp. 3d 36, 55 (E.D.N.Y. 2017); *see also Tsadilas*, 786 N.Y.S.2d at 480-81 ("The arbitration provision . . . is not unconscionable because plaintiff had the opportunity to opt out without any adverse consequences."); *Johnson v. Chase Manhattan Bank USA, N.A.*, 2 Misc. 3d 1003(A), at *9, 784 N.Y.S.2d 921 (Table) (Sup.

Ct., N.Y. Cty.) (rejecting claim that arbitration agreement was unconscionable in part because it permitted the plaintiff to opt out), *aff'd*, 13 A.D.3d 322 (N.Y. App. Div. 1st Dep't 2004). Moreover, the arbitration provisions were not buried in a mammoth document or couched in impenetrable jargon, but rather were set out in a separate document that the Plaintiffs were required to initial independently. And courts applying New York law have repeatedly held that "the fact that there is inequality in bargaining power between an employer and a potential employee is not a sufficient reason to hold that arbitration agreements are not enforceable in the employment context." *Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 570 (S.D.N.Y. 2013) (citing *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010)). Thus, the Plaintiffs have not shown that they lacked a "meaningful choice" when faced with the decision of whether or not to accept the 3PL Agreement's arbitration provisions. *See King*, 851 N.E.2d at 1191.

I have already found the Plaintiffs' arguments regarding the 3PL Agreement's cost-shifting provisions lacking,[9] and I find no indication that New York's courts would find the confidentiality clause "so outrageous as to warrant holding [that provision] unenforceable on the ground of substantive unconscionability alone." *Gillman*, 534 N.E.2d at 829; *see Suqin Zhu v. Hakkasan NYC LLC*, 291 F. Supp. 3d 378, 392 (S.D.N.Y. 2017) (applying New York law, finding confidentiality clause not

---

[9]    "Courts applying New York law have refused to find that fee-splitting provisions in arbitration agreements are unenforceable where plaintiffs have not affirmatively demonstrated that the fee-splitting provisions would preclude them from pursuing their rights in the arbitral forum." *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 57 (E.D.N.Y. 2017) (citing *Brady v. Williams Capital Grp., L.P.*, 928 N.E.2d 383, 384 (N.Y. 2010)).

unconscionable where its terms were equally applicable to both parties and defendant employer bore any unreasonable arbitration costs); *see also Chatziplis v. PriceWaterhouseCoopers LLP*, No. 17 CIV. 4109 (ER), 2018 WL 3323820, at \*3 (S.D.N.Y. July 6, 2018) (same). I therefore find that the Plaintiffs have failed to establish that the 3PL Agreement's arbitration provisions are unconscionable under the laws of New York. The Plaintiffs offer no further arguments against enforcement of those arbitration provisions, and the 3PL Defendants' motion to compel arbitration is **GRANTED**.[10]

## II.   The CMS Agreement

The Plaintiffs argue that the CMS Agreement's arbitration provisions should not be enforced for largely the same reasons they advanced against the 3PL Agreement. CMS responds that the Plaintiffs' arguments are moot because CMS has covenanted not to enforce the arbitration provisions with which the Plaintiffs find fault.[11]

---

[10]     Because I do not find any part of the 3PL Agreement to be unconscionable under New York law I need not consider whether, as the Plaintiffs argue, courts should decline to sever unconscionable provisions from an arbitration agreement because those provisions discourage plaintiffs from seeking to vindicate their rights. In any event, New York's courts have not adopted the "chilling effect" theory on which the Plaintiffs rely. *See Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 124 (2d Cir. 2010).

[11]     Specifically, CMS has covenanted:

1. . . . to refrain from enforcing against plaintiffs that provision of the [CMS] agreement at Section A that requires "[t]he location of the arbitration proceeding must be in Maricopa County, Arizona" and to refrain from objecting on the basis of venue to any arbitration in connection with the Action that plaintiffs pursue in Maine, or such other location mutually agreed to by the parties in writing.

2. . . . to refrain from enforcing against plaintiffs that provision of the [CMS] agreement at Section E that provides that the parties may not "disclose the

First Circuit precedent not cited by either party supports CMS's position. In *Large v. Conseco Financial Servicing Corp.*, the plaintiffs opposed the defendant's motion to compel arbitration and requested discovery into whether the costs of arbitration would be prohibitive. 292 F.3d 49, 51 (1st Cir. 2002). In response, the defendant offered to cover all arbitration costs incurred by the plaintiffs in connection with the case and to hold the arbitration in the plaintiffs' home forum. *Id.* at 51. The district court denied the plaintiffs' request for discovery and the First Circuit affirmed, finding that the "[defendant's] offer to pay the costs of arbitration and to hold the arbitration in the [plaintiffs'] home state of Rhode Island mooted the issue of arbitration costs." *Id.* at 56-57; *see also id.* at 57 (noting that "the district court was not required to permit discovery on an issue that no longer had any bearing on the outcome of the dispute before it"); *Sleeper Farms v. Agway, Inc.*, 211 F. Supp. 2d 197, 203 (D. Me. 2002) (finding plaintiffs failed to show that arbitration was prohibitively expensive because "it appears that [the] fees in this case have been waived by the arbitrator"), *aff'd*, 506 F.3d 98 (1st Cir. 2007).[12] In light of *Large*, I find that CMS's

---

existence, content or results of any arbitration hereunder without the prior written consent of the parties."

3. . . . to refrain from enforcing against plaintiffs that provision of the [CMS] agreement at Section D that provides that "[c]osts incidental to the arbitration, including the cost of the Arbitrator and the meeting site ("Arbitration Costs") will be borne by CMS and I equally," and . . . that [CMS] will be fully responsible for the arbitration costs.

CMS Ex. A (ECF No. 70-1). I will hold CMS to these covenants.

[12]    I note that some courts have persuasively argued that parties should not be allowed to waive enforcement of selected clauses in an arbitration agreement because doing so amounts to unilaterally amending a contract—an effort that some courts reject. *E.g. Goodwin v. Branch Banking & Tr. Co.*, 699 F. App'x 274, 276 (4th Cir. 2017) (per curiam) ("[A] party's offer to waive certain limitations in arbitration provisions should be rejected because one party cannot unilaterally alter the terms of a contract after it is formed and courts are not authorized to remake a contract."). In *Large*, however,

covenant not to enforce moots the Plaintiffs' statutory vindication argument regarding the CMS Agreement arbitration provisions' cost-splitting and forum selection clauses and moots the Plaintiffs' unconscionability arguments regarding the cost-splitting, confidentiality, and forum selection clauses, taken individually.[13]

This does not, however, fully resolve the Plaintiffs' arguments regarding the CMS Agreement. The Plaintiffs also argue that the contested clauses are symptoms of a broader disease—that is, the problematic clauses are proof that the entire arbitration agreement is unconscionable and cannot be enforced. Opp'n to CMS Mot. 9 (citing *Capili v. Finish Line, Inc.*, 116 F. Supp. 3d 1000, 1009 (N.D. Cal. 2015)). By this logic, CMS's waiver is irrelevant because excising the problematic clauses would not cure the deeper rot.

The authorities on which the Plaintiffs rely for their theory apply California law. *See* Opp'n to CMS Mot. 9-10 (citing *Capili*, 116 F. Supp. 3d at 1009; *Martinez v. Master Prot. Corp.*, 12 Cal. Rptr. 3d 663, 671 (Cal. Ct. App. 2d Dist. 2004); *Armendatiz v. Found. Health Psychcare Servs., Inc.*, 6 P3d 669, 698-99 (Cal. 2000)). The CMS Agreement does not contain a choice of law clause, but the parties appear to agree that Maine law applies to the construction of that agreement. Because

---

the First Circuit seems headed in the opposite direction. Moreover, even if I were to reject CMS's waiver and to consider each of the contested provisions individually, in light of the CMS Agreement's opt-out provision I would find the arbitration provisions enforceable.

[13] CMS's covenant not to enforce does not mention the CMS Agreement's attorney's fees provision. As with the 3PL Agreement, the Plaintiffs argue that the CMS Agreement prevents the Plaintiffs from vindicating their statutory rights because it limits their ability to collect attorney's fees under the FLSA. The relevant provisions of the CMS and 3PL Agreements are identical, and the Plaintiffs' argument fails as to the CMS Agreement for the same reasons stated above. *See supra* § I.B.

unconscionability is a state-law matter, I will not stretch the doctrine beyond the bounds set by the Law Court. I will, however, consider whether Maine's courts would deem the CMS Agreement's arbitration provisions collectively unconscionable.

The Law Court has set a high bar for unconscionability, stating that courts will grant relief from a contract "if upon the whole circumstances, the contract appears to be grossly against conscience, or grossly unreasonable and oppressive." *Bither v. Packard*, 98 A. 929, 933 (1916); *Bordetsky v Charron*, No. BCD-RE-10-8, 2011 WL 4528211, at *4 (Me. B.C.D. Aug. 16, 2011) (same). The CMS Agreement's arbitration provisions do not reach this bar. The Plaintiffs have presented authority that suggests that, in some circumstances, Maine's courts may find forum selection, cost-splitting, and confidentiality provisions in arbitration agreements to be unconscionable.[14] The Plaintiffs cannot, however, avoid the fact that here, they did not need to agree to those restrictions. CMS gave the Plaintiffs 30 days to review the arbitration provisions and to opt out of them if they so desired. The Plaintiffs have not suggested that there were any express or implied adverse consequences to opting out of the arbitration provisions, nor have they shown that the Plaintiffs lacked the opportunity or ability to read the opt-out provision. Under "the whole circumstances,"

---

[14]     *See Wayward v. Get Air Portland ME, LLC*, No. CV-17-200, 2017 WL 6804951, at *2 (Me. Super. Ct. Nov. 17, 2017) (severing California forum selection clause from arbitration agreement because it "would be entirely unfair to require a family of Maine residents to travel to California to mediate and arbitrate a claim for an injury that occurred in Maine at Defendant's Portland, Maine location," as "the travel expense alone would likely be prohibitive of Plaintiffs' pursuit of their claim"); *Barrett v. McDonald Investments, Inc.*, 870 A.2d 146, 155 (Me. 2005) (Alexander, J., concurring) (suggesting (1) whether "arbitration proceedings [are] shrouded in secrecy so as to conceal illegal, oppressive or wrongful business practices" and (2) whether "arbitrators' fees . . . make small claims prohibitive . . . [or] discriminate against consumers or workers of modest means" as two factors among eight that courts should "address[] in determining whether a mandatory arbitration clause in a contract of adhesion may be unconscionable").

therefore, I do not find the arbitration agreement "to be grossly against conscience, or grossly unreasonable and oppressive." *Bither*, 98 A. at 933. In turn, I find that the CMS Agreement's arbitration provisions are enforceable and I **GRANT** CMS's motion to compel arbitration.

All that remains is the disposition of this action. "Where one side is entitled to arbitration of a claim brought in court, in this circuit a district court can, in its discretion, choose to dismiss the law suit, if all claims asserted in the case are found arbitrable." *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 372 (1st Cir. 2011). Here, having decided that the Plaintiffs' claims are arbitrable, I find that dismissal is warranted.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant CMS's motion to compel arbitration and **GRANTS** the 3PL Defendants' motion to compel arbitration. The case will be **DISMISSED** as to Plaintiffs Curtis and Lowell.

The parties make only cursory mention of the individuals other than Curtis and Lowell who have opted in to this case as collective action plaintiffs (the "**Opt-In Plaintiffs**"). Counsel for the Opt-In Plaintiffs is hereby **ORDERED TO SHOW CAUSE** within 14 days why this action should not be dismissed in its entirety. If cause is not shown, this action will be dismissed.

SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 20th day of November, 2018.